Roy Lee Miller ("Roy Lee"), on January 14, 1997, while hospitalized at Jackson Hospital, suffered severe burns over a large portion of his body. On February 19, 1997, Roy Lee executed a durable power of attorney in favor of Charles Miller ("Charles"), his uncle. The power of attorney gave Charles, among other things, the authority to "institute, prosecute, defend, compromise, arbitrate and dispose of legal, equitable, or administrative hearings, actions, suits, attachments, arrests, distresses, or other proceedings, or otherwise engage in litigation in connection with any legal or equitable matters." On January 11, 1999, just three days before the statutory limitations period would have run on Roy Lee's personal-injury claims arising from his burns, Charles filed a medical-malpractice action captioned "Charles Miller, on behalf of Roy Lee Miller v. Jackson Hospital and Clinic, Raghu Mukkamala, M.D., Glenn Yates, M.D., and Primary Care Internists of Montgomery." The complaint alleged that negligence on the part of the defendants had caused Roy Lee's injuries.
All defendants moved to dismiss or, in the alternative, for a summary judgment, on the basis that Charles, as named in the complaint, was not the real party in interest, as required by Rule 17, Ala.R.Civ.P. On August 16, 1999, after the expiration of the limitations period, Charles moved to amend the complaint by adding Roy Lee as a named plaintiff. On August 19, 1999, the trial court entered a summary judgment in favor of all defendants. The court denied Charles's motion to alter, amend, or vacate the summary judgment, ruling that Charles was not the real party in interest.
The trial court determined that Charles did not have the authority to sue on behalf of Roy Lee because the power of attorney did not specifically address Charles's bringing a personal-injury tort action on behalf of Roy Lee. The trial court also held that because Charles was not the real party in interest, he did not have standing to file the action on behalf of Roy Lee and, thus, that the court had never had jurisdiction over the case. Because the limitations period had run before the complaint was amended to add Roy Lee, the court held, there was no valid complaint to which the amendment could relate back pursuant to Rule 17(a).
First, we must determine whether the power of attorney executed by Roy Lee vested Charles with the authority to file a personal-injury action for the benefit of Roy Lee. Second, if it gave Charles that authority, we must decide whether Charles *Page 124 
was a real party in interest, for purposes of Rule 17(a), Ala.R.Civ.P. Third, if Charles was not a real party in interest, then we must determine whether the complaint could be amended to name Roy Lee as the real party in interest or to substitute him for Charles, subject to the provisions of Rule 17(a) allowing relation back of such an amendment.
 I. Standard of Review
This Court will review a summary judgment de novo, and it will apply the same standard the trial court applied. Bussey v. JohnDeere Co., 531 So.2d 860 (Ala. 1988). A summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P.
 II. Effectiveness of the Durable Power of Attorney
A. Whether the Power of Attorney was Ineffectivefor Want of Specificity.
The trial court held that the power of attorney gave Charles no authority to sue on behalf of Roy Lee because, it found, the power to file a personal-injury action was not specifically stated within the powers described in the document. In support of this conclusion, the trial court cited Lamb v. Scott, 643 So.2d 972
(Ala. 1994), for the proposition that the authority granted through a power of attorney is to be strictly construed and restricted to those powers expressly granted therein. Id. at 973. The trial court reasoned that, because of its want of specificity, the power of attorney gave Charles no power to bring a personal-injury action on behalf of Roy Lee.
We disagree with this conclusion and, in so doing, distinguishLamb. In Lamb, a mother gave a durable power of attorney to her oldest daughter, authorizing the daughter to manage her affairs. A year later, the mother executed a will leaving all her property, including a farm, to her two daughters and her stepson, in equal portions. The oldest daughter, purporting to act pursuant to the power of attorney, conveyed the farm to herself and her sister, to the exclusion of her stepbrother. This Court held: "One who accepts a power of attorney covenants to use the power for the sole benefit of the one conferring the power and to use it in a manner consistent with the purposes of the agency relationship created by the power of attorney." Lamb, 643 So.2d at 974. "The principal-agency relationship is fiduciary in nature and imposes upon the agent a duty of loyalty, good faith, and fair dealing."Sevigny v. New South Fed. Sav. Loan Ass'n, 586 So.2d 884, 887
(Ala. 1991). In Myers v. Ellison, 249 Ala. 367, 369,31 So.2d 353, 355 (1947), this Court stated:
 "An agent sustains a position of trust toward his principal and in all transactions affecting the subject of his agency, the law dictates that he must act in the utmost good faith and must make known to his principal . . . all material facts within his knowledge which in any way affect the transaction and subject matter of his agency.
 "The law sedulously regards this principle and acts of an agent which tend to violate this fiduciary obligation are prima facie voidable, and are considered, in law, as `frauds upon confidence bestowed.'"
(Citations omitted.)
The situation presented by Lamb involved self-dealing. This Court held that in order to act against the intent of the donee as expressed in her will, the attorney-in-fact had to have the express authority to do so. 643 So.2d at 973. In other words, this present case is distinguishable from Lamb. The power of attorney in Lamb made no express grant of authority to engage in self-dealing, and the self-dealing appeared to go against the true intent of the donee. See, also, Hall v. Cosby, 288 Ala. 191,258 So.2d 897 (1972), and Dillard v. Gill, 231 Ala. 662, 166 So. 430 *Page 125 
(1936) (holding that authority to self-deal must be specifically granted).
Roy Lee vested Charles with the authority to "institute, prosecute, defend, compromise, arbitrate and dispose of legal, equitable, or administrative hearings, actions, suits, attachments, arrests, distresses, or other proceedings, or otherwise engage in litigation in connection with any legal or equitable matters." (Emphasis added.) Charles's exercise of the power by filing an action for the benefit of Roy Lee did not involve self-dealing. To force the donor to predict the future and to list every cause of action or legal proceeding that might become necessary in the months or years after the execution of the power of attorney, even in instances where there is no self-dealing, lest a court later hold the power of attorney ineffective, would frustrate the donor's purpose in executing the instrument. We decline the defendants' request to impose the requirement of specificity even in instances where there has been no self-dealing. To do so would unnecessarily inhibit the utility of a durable power of attorney.
B. Whether Proof of Incompetency of the Donor Was Requiredin Order to Make the Durable Power of Attorney Effective
The defendants also contend that § 26-1-2, Ala. Code 1975, gives the attorney-in-fact only the power to bring actions after the donor becomes incapacitated or incompetent, and they point to the absence of evidence of incompetence. While § 26-1-2 permits a durable power of attorney to survive incompetency of the donor, the statute provides no basis for a conclusion that all such powers of attorney are dormant until the donor becomes incompetent. Section 26-1-2(a) recites the operative language necessary and offers two choices. One option simply states that the power is unaffected by subsequent incompetence of the donor, while the other option provides that the power shall not become effective until the donor becomes incompetent. The language used by Roy Lee is of the former category, and that language suggests the power was to be effective immediately. The absence of evidence indicating Roy Lee is incompetent is inconsequential.
 III. Effect of Charles's Commencement of the Action
A. Whether the Durable Power of Attorney Constitutesan Assignment of a Cause of Action
The trial court, in entering the summary judgment, held that "one cannot assign a personal injury action to another or appoint an agent or attorney-in-fact to bring a personal injury lawsuit on his behalf." To the extent that statement deals with an assignment of the right to recover for a purely personal tort, it correctly expresses the general rule. See Lowe v. Fulford, 442 So.2d 29, 32
(Ala. 1983) ("`It is . . . well settled that, in the absence of statutory provision, rights of action for torts purely personal do not survive, and are not assignable.'") (quoting Holt v.Stollenwerck, 174 Ala. 213, 215, 56 So. 912 (1911). However, Roy Lee did not attempt to transfer or assign his rights in this action to Charles. Charles, acting as attorney-in-fact, brought this action for the benefit of Roy Lee, and not in his individual capacity to assert rights on his own behalf, as would be the case with an assignee.
B. Whether Charles's Commencement of the ActionWas Appropriate
Rule 17(a), Ala.R.Civ.P., provides, in pertinent part:
 "Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought." *Page 126 
An attorney-in-fact is not one of the persons named in these exceptions, and no statute expressly allows the commencement of actions by attorneys-in-fact. Under the comparable federal rule, it has been held that, "standing alone, a power of attorney does not enable the grantee to bring suit in his own name." AdvancedMagnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 18 (2d Cir. 1997). Charles cannot be considered a real party in interest, and he does not come within any exception stated in Rule 17(a).
C. Whether Charles's Lack of Status as a Real Partyin Interest is Curable by Amendment
Roy Lee and Charles argue that even if Charles should not have commenced the action on behalf of Roy Lee, the trial court should have allowed Roy Lee to be substituted as the real party in interest. Rule 17(a) provides:
 "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."
(Emphasis added.) The defendants argue that this provision of Rule 17 does not apply in cases such as this one, where the limitations period ran before the motion to amend or substitute was filed. They argue that because the original plaintiff was not the real party in interest he never had standing to sue and, as a result, the jurisdiction of the court to adjudicate Roy Lee's claims was never invoked. Thus, they say, there was properly pending before the trial court no complaint to the filing of which an amendment could relate back.
In support of this argument, the defendants cite State v. Propertyat 2018 Rainbow Drive Known as Oasis, 740 So.2d 1025 (Ala. 1999). We find this case distinguishable from 2018 Rainbow Drive. In that case, the City of Gadsden filed a complaint seeking condemnation and forfeiture of property located within the boundaries of the City, on grounds that it was connected to drug trafficking. Id. at 1026. The trial court dismissed the action, concluding that the City had no authority to bring such an action under a condemnation statute that vested the right to sue exclusively in the State. Id. at 1027. This Court refused to permit relation back of an amendment substituting the State for the City. Id. at 1029. However, 2018 Rainbow Drive dealt with a situation where the party that commenced the action, the City, had no jural relationship with the real party in interest, the State. Here, Charles, as attorney-in-fact under a valid and immediately effective power of attorney, maintained a jural relationship with the real party in interest sufficient to invoke the court's jurisdiction to the extent necessary to allow Rule 17(a) to operate.
The rationale of the United States Court of Appeals for the Second Circuit in Advanced Magnetics, Inc. v. Bayfront Partners, Inc., supra, 106 F.3d 11, applying the comparable Rule 17(a), Fed.R.Civ.P., in a similar situation, is highly persuasive. Advanced Magnetics, Inc. ("AMI"), purporting to represent not only AMI but also several individual shareholders who had assigned AMI their right to sue, sued Bayfront Partners, Inc. ("Bayfront"), alleging violations of federal securities laws in connection with a public offering. Id. at 11. Bayfront moved to dismiss all claims brought by AMI in its capacity as assignee. Id. AMI subsequently moved to amend the complaint to add as plaintiffs the individual shareholders. Id. The district court determined that because the assignment agreements allowed the individual shareholders to retain certain rights, the agreements were not assignments, but merely powers of attorney, which, it held, do "not enable the grantee *Page 127 
to bring suit in his own name." Id. at 18. Based on this determination, the district court granted the defendant's motion and dismissed the shareholders' claims. Id. at 11. It also denied AMI's motion to amend because, it held, the amendment would be futile because, in the opinion of the district court, the amended complaint would be barred by the statute of limitations. Id. at 13.
The Second Circuit disagreed and held that the motion to amend should have been "freely allowed," and, with regard to the running of the limitations period, it quoted an earlier case from the Seventh Circuit:
 "`The substitution of such parties after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based. The courts have freely upheld the filing of an amended complaint under these circumstances.'"
Advanced Magnetics, 106 F.3d at 19 (quoting Staren v. AmericanNat'l Bank Trust Co., 529 F.2d 1257, 1263 (7th Cir. 1976)). Furthermore, the court in Advanced Magnetics determined that while the "defendants' challenge to the original complaint was styled a motion to dismiss for lack of standing, their unspoken premise was that AMI lacked standing because the selling shareholders remained, with respect to their own claims, the real parties in interest." Id. at 20. The court quoted Federal Rule 17(a) and stated:
 "Although the district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party, there plainly should be no dismissal where `substitution of the real party in interest is necessary to avoid injustice.'"
Id. at 20 (citations omitted). Finally, the court in AdvancedMagnetics held that because the original complaint adequately identified the parties and explained the claims made against the defendants, and because there was no evidence that AMI's failure to name the proper parties was deliberate, the trial court, acting under Rule 17(a), should have granted leave to file the amended complaint substituting the shareholders as plaintiffs. Id. It also expressly held that "[t]hose claims will relate back to the date of the original complaint," pursuant to Rule 17, despite the fact that the limitations period had run. Id. at 21.
This case presents facts almost identical to those presented inAdvanced Magnetics. When Charles filed his complaint "on behalf of" Roy Lee, he did so under the mistaken belief that, pursuant to the durable power of attorney, he could, in his own name, file an action on behalf of Roy Lee. The complaint specifically named Roy Lee as the party claiming to have been injured as a result of the defendants' alleged negligent acts, and no one presented evidence to indicate that Charles's filing in the wrong name was deliberate. We therefore hold that the trial court erred in not granting the motion to amend so as to substitute Roy Lee as the real party in interest under Rule 17.
 IV. Conclusion
The summary judgment in favor of all defendants is reversed, and the case is remanded for further proceedings, with Roy Lee substituted as plaintiff. The substitution shall relate back to the date the action was commenced.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox and Johnstone, JJ., concur.
Cook, J., concurs in the result. *Page 128